IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PHYLLIS TAIT and TIFFANY
MINOTT,

      Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC,
BNY MELLON, NATIONAL
ASSOCIATION, and DEFENDANT
DOE,

      Defendants.

CIVIL ACTION NO.
1:14-CV-2885-CC-LTW

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This case is presently before the Court on Defendants Nationstar Mortgage LLC and BNY Mellon, National Association's Partial Motion to Dismiss. (Doc. 3). For the reasons outlined below, this Court **RECOMMENDS** that Defendants' Partial Motion to Dismiss be **GRANTED**. (Doc. 3).

## DEFENDANTS' MOTION TO DISMISS

I.    **Background**

Plaintiffs Phyllis Tait and Tiffany Minott ("Plaintiffs") filed this lawsuit on August 4, 2014, in the Superior Court of Fulton County. (Doc. 1-1). Defendants Nationstar Mortgage LLC ("Nationstar") and BNY Mellon National Association ("BNY") (collectively "Defendants") removed it to this Court on September 8, 2014. Plaintiffs' lawsuit includes claims arising out of Defendants' foreclosure proceedings

on Plaintiffs' second home ("the Property"), located in Fulton County, Georgia. (Compl. ¶ 15, 57).  Plaintiffs originally obtained their loan for the acquisition of the Property through First Horizon Home Loan Corporation (hereinafter "First Horizon") as their original lender.  (Compl. ¶ 12).  Plaintiffs executed a Security Deed benefitting Mortgage Electronic Registration Systems, Inc. (hereinafter, "MERS"), acting as nominee for the lender and its successor and assigns.  (Compl. ¶¶ 11-12, 15, Ex. B).  On or about April 15, 2009, MERS assigned its interests in the Security Deed to First Horizon.  (Compl. ¶ 13).  Around June 2, 2014, First Horizon assigned its interests in the Security Deed to The Bank of New York Mellon, as Trustee for the Holders of the First Horizon Mortgage Pass-Through Certificates, Series FHAMS 2006-FA8. (Compl. ¶ 14).

Plaintiff Tait became unemployed in June 2009; as a result, from 2009 through 2011, Plaintiffs applied for multiple loan modifications in order to preserve their ownership interests in the Property.  (Compl. ¶¶ 17-18).  Plaintiffs claim that they received conflicting and misleading information regarding the identity of the investor and the servicer of their loan on the Property.  For instance, around May 2011, McCalla Raymer, LLC (hereinafter "McCalla") sent a foreclosure notice, dated May 31, 2011, informing Plaintiffs that MetLife Home Loans ("MetLife") had the full authority to modify, amend, and negotiate the mortgage loan terms of the Property.  (Compl. ¶¶ 21-22).  Plaintiffs state that on June 28, 2011, they applied for a modification with First

Horizon/MetLife and submitted all requested documents to do so.  (Compl. ¶ 23).

Plaintiffs state, however, that First Horizon/MetLife repeatedly asked Plaintiffs to

resubmit documents and never acted on Plaintiffs' requested modification, but did not

foreclose on Plaintiffs' home.  (Compl. ¶¶ 24-25).

Plaintiffs state that sometime between September or October 2011, Defendant

Nationstar contacted Georgia Power, the utility company, and removed Plaintiff Tait's

name from the utility account without her authorization.  (Compl. ¶ 46).  Further,

Plaintiffs contend that around October 13, 2011, Defendant Nationstar unlawfully

entered Plaintiffs' Property and changed the locks.  (Compl. ¶¶ 47).

Around November 28, 2011, Plaintiffs received a letter from McCalla notifying

them that their debt was owed to Defendant Nationstar, but that Nationstar might not be

the recorded holder of the deed.  (Compl. ¶ 26).  Plaintiffs state they received several

foreclosure notices, dated November 29, 2011, December 27, 2011, and March 12,

2012.  (Compl. ¶¶ 27-29).  Each of these notices identified Defendant Nationstar as the

entity with the full authority to modify, amend, and negotiate the loan terms for the

mortgage on the Property.  (Id.).  Plaintiffs state that the November 28, 2011 and March

12, 2012 notices of foreclosure listed Defendant BNY as the secured investor(s) of the

loan on the Property.  (Compl. ¶¶ 27, 29).  The March 12, 2012 letter informed Plaintiffs

that a foreclosure sale was scheduled on the Property for the first Tuesday in May 2012.

(Compl. at Ex. L).

Around March 15, 2012, a Nationstar employee, Olivia Davis, offered Plaintiffs

3

another opportunity to apply for a loan modification.  (Compl. ¶ 30).  Plaintiffs state they sent documents required to assess the modification in March 2012 and April 2012. (Compl. ¶¶ 30-31).  Nevertheless, Plaintiffs state that on April 27, 2012, they received another letter from McCalla, indicating that a foreclosure sale was scheduled for May 1, 2012, and indicating that MetLife had the full authority to modify, amend, and negotiate the loan terms for the mortgage on the Property.  (Compl. ¶ 22, Ex. M). Around May 1, 2012, Plaintiffs state that they received another letter, dated April 27, 2012 (the "April Acknowledgment Letter"), from Nationstar, in which Nationstar acknowledged receipt of Plaintiffs' modification request and all supporting documents. (Compl. ¶ 33).  This letter also stated the evaluation period for the modification request would be twenty to sixty days, but the Property would not be sold at a foreclosure sale during this period.  (Id.).  Plaintiffs aver that around June 22, 2012, they received a similar letter from Nationstar (hereinafter, the "June Acknowledgment Letter") acknowledging that Nationstar received Plaintiffs' modification request, explaining that the evaluation period for the modification would be twenty to sixty days, and assuring Plaintiffs that the Property would not be sold at a foreclosure sale during this period. (Compl. ¶ 38, Ex. P).  Plaintiffs state they received another letter, dated June 26, 2012 (the "June Request Letter"), from Defendant Nationstar which notified Plaintiffs that Nationstar still needed additional documents to complete Plaintiffs' modification request with a deadline for July 27, 2012, and failure to comply would result in denial of the modification. (Compl. ¶¶ 41-42).

4

Despite Nationstar's assurances that the Property would not be sold at a foreclosure sale during the evaluation period, a foreclosure sale occurred on May 1, 2012. (Compl. ¶ 35). Plaintiffs state that on May 8, 2012, they sent a letter to Defendant Nationstar and McCalla through their counsel disputing the foreclosure. (Compl. ¶ 37, Ex. P). Nationstar responded in writing on June 28, 2012. (Compl. ¶ 44, Ex. R). Therein, Nationstar apologized for miscommunication to Plaintiff Tait and indicated that the foreclosure sale scheduled for May 1, 2012, had been rescinded. (Compl. ¶ 44, Ex. R). Nationstar's letter further advised that Plaintiffs could re-apply for a loan modification and indicated documents needed. (Id.).

Plaintiffs argue in Count I of their Complaint that Defendant Nationstar and Defendant BNY wrongfully foreclosed on Plaintiffs' property during the period in which they were evaluating Plaintiffs' application for a loan modification. (Compl. ¶ 57). In support, Plaintiffs contend that despite Nationstar's written assurances that it would not foreclose on the Property during the period in which the loan modifications were being considered, Defendant Nationstar and Defendant BNY proceeded with and completed the foreclosure sale of the Property on May 1, 2012. (Compl. ¶¶ 52-53, 56).

Plaintiffs allege in Count II of their Complaint that Defendants breached their contractual duties when Defendants foreclosed on the Property contrary to Nationstar's assurances within the April Acknowledgment Letter that they would not foreclose during the period in which Plaintiffs' modification request was being considered. (Compl. ¶¶ 61-63). Plaintiffs further contend that Defendants' actions in this regard

5

breached the Security Deed by failing to exercise the power to foreclose fairly. (Compl. ¶ 61). In Count III, Plaintiffs allege that Defendants breached their duties of good faith and fair dealing when Nationstar falsely communicated to Plaintiffs in the April Acknowledgment Letter that it would not proceed with the foreclosure sale of the Property, but continued with and completed the foreclosure sale on May 1, 2012. (Compl. ¶¶ 77-78).

In Counts IV and V, Plaintiffs allege that Nationstar's April Acknowledgment Letter, June Acknowledgment Letter, and June Request Letter fraudulently misrepresented that a foreclosure sale of the Property would not occur until after the modification evaluation period concluded. (Compl. ¶¶ 81, 87, 93). Plaintiffs state that they relied on Nationstar's statements to their detriment because they could have petitioned for bankruptcy if they had known that Defendants would not forebear foreclosing on their property. (Compl. ¶ 86). In Count VI of Plaintiffs' Complaint, Plaintiffs allege that Defendant Nationstar negligently misrepresented that no foreclosure sale would occur during the period in which the modification was considered. (Compl. ¶¶ 96-98).

In Count VII, Plaintiffs request that this Court declare (1) Defendants have misrepresented the true identity of the secured creditor and investor of Plaintiffs' loan; (2) the true identity of the secured creditor and investor of Plaintiffs' loan; (3) the identity of the party who has full authority to modify Plaintiffs' loan; and (4) that the foreclosure was wrongful under Georgia law. (Compl. ¶ 100-01).

6

Count VIII of the Plaintiffs' Complaint alleges that Defendants Nationstar and BNY trespassed on Plaintiffs' Property when they notified Georgia Power that the Property was vacant, had Plaintiff Tait's name removed from the utility account, and unlawfully entered the Property to change the locks. (Compl. ¶¶ 105-08).  In Count IX of Plaintiffs' Complaint, they contend that under the doctrine of promissory estoppel, Defendant Nationstar's promise not to foreclose until after Nationstar evaluated Plaintiffs' modification requests should be enforced. (Compl. ¶ 112).  Plaintiffs allege in Count X of their Complaint that they incurred unnecessary legal expenses due to Defendant Nationstar and Defendant BNY's actions; therefore, Plaintiffs should be able to recover for their attorney's fees and expenses of litigation.  (Compl. ¶ 117-18).

Defendant Nationstar and Defendant BNY argue that Plaintiffs' (1) wrongful foreclosure claim should be dismissed because the May 1, 2012 nonjudicial foreclosure sale was never consummated and because Plaintiffs have not tendered the amount owed under the loan; (2) breach of contract claim fails because Plaintiffs' have not identified any provision within the Security Deed that Defendants breached, the April Acknowledgment Letter was not a valid contract, and Plaintiffs do not identify any damages they suffered; (3) good faith and fair dealing claim fails because there was no breach of an actual term of a valid contract; (4) fraud claims fail because Plaintiffs have not complied with Federal Civil Procedure Rule 9, Plaintiffs did not suffer any damages since the foreclosure sale never was consummated, and Plaintiffs could not have reasonably relied on the agreement to postpone the foreclosure sale; (5) negligent

misrepresentation claim similarly fails because Plaintiffs did not plead an economic injury resulting from their reasonable reliance on false information provided by Defendants and their agents; (6) promissory estoppel claim fails because given that the foreclosure sale was never consummated, Plaintiffs did not suffer any damages as a result of reliance on Defendants' promise not to foreclose; and (7) request for declaratory relief fails because there are no allegations demonstrating the presence of an actual controversy.

## II.   **Legal Analysis**

### A.   **12(b)(6) Motion to Dismiss Standard**

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief or it is based on an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford Cnty., 960 F.2d 1002, 1009-10 (11th Cir. 1992). A Rule 12(b)(6) motion to dismiss also tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To state a claim with sufficient specificity requires that the complaint have enough factual matter taken as true to suggest required elements of the claim. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007); Hill v. White, 321 F.3d 1334, 1335 (11th

Cir. 2003).  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 555 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)).

### B.    **Wrongful Foreclosure**

Defendants contend that Plaintiffs' wrongful foreclosure claims should be dismissed because the foreclosure sale on May 1, 2012, was rescinded and thus never consummated and therefore there is no foreclosure to serve as the basis for the Plaintiffs' wrongful foreclosure claims.  In support, Defendants rely upon Exhibit R of Plaintiffs' Complaint, which is a letter from Nationstar to Plaintiffs' counsel stating that the foreclosure sale was rescinded.  Defendants maintain that because Defendant Nationstar rescinded  the foreclosure sale, Plaintiffs' interest in the Property was never conveyed as no Deed Under Power was executed or delivered; therefore, a valid foreclosure did not occur.  Defendants maintain that because Plaintiffs have not alleged that a deed under power was recorded, Plaintiffs fail to present adequate facts that a fully consummated foreclosure took place.

In response, Plaintiffs counter that the foreclosure is consummated once the bid is accepted at a foreclosure sale and that the bid itself conveys the interest in the Property.  Plaintiffs further argue that the cases relied upon by the Defendants in support of the notion that the sale was not consummated are distinguishable because in such cases, the bank had neither executed a security deed, recorded a security deed, nor

applied the sale proceeds to the debtor's loan.  Plaintiffs argue however that they have yet to be given the opportunity to engage in discovery in order to determine whether Defendant Nationstar ever executed a deed under power or to determine whether sale proceeds were applied to the Plaintiffs' loan balance.  As a result, Plaintiffs argue that it is premature to conclude a foreclosure did not occur.  Plaintiffs maintain that they have alleged sufficient facts in their Complaint to give rise to a wrongful foreclosure claim.

In order to establish a claim for wrongful foreclosure, at a minimum, a foreclosure must have occurred.  Ligon v. BAC Home Loans Serv., LP., No. 1:11-CV-3811-RWS, 2012 WL 4464946, at *1 (N.D. Ga. Sept. 25, 2012); Mayrant v. Deutsche Bank Trust Co. Americas, No. 1:10-CV-3094-TWT, 2011 WL 1897674, at *2 (N.D. Ga. May 17, 2011).  Under Georgia law, divestment of rights and title to property is the pivotal point when determining whether a foreclosure occurred.  See Rhodes v. Anchor Rode Condo. Homeowner's Assoc., Inc., 270 Ga. 139 (1998) (stating that a valid foreclosure under Georgia law divest all the debtor's rights and title to the property).  Until consummation of the sale occurs, real estate cannot be considered to have been sold on foreclosure.  Tampa Inv. Grp. v. Branch Banking & Trust Co., 290 Ga. 724, 727 (2012).  Until a deed under power is transferred and consideration is passed "the sale itself has not occurred; there is only a contract to buy and sell."  Tampa Inv. Grp., 290 Ga. at 727.  Although Plaintiffs maintain that they lost their equity of redemption of the Property the moment the Property was sold at the courthouse steps to the highest bidder, the Georgia Supreme

10

Court has made clear that until the foreclosing party executes and delivers a deed under power conveying the borrowers' interest to itself and indicates in a writing that it has applied foreclosure proceeds, there has been no foreclosure sale. Tampa Inv. Grp., 290 Ga. at 724, 727; Bldg. Block Enters. v. State Bank and Trust Co., 314 Ga. App. 147, 152 (2012) (holding that because bank did not transfer borrower's right of possession to itself or apply sale proceeds to eliminate borrower's debt, sale was not consummated); see also Frank S. Alexander, Ga. Real Estate Finance and Foreclosure Law § 8:9 (2011-2012 ed.) ("The deed under power of sale is the instrument by which the foreclosing creditor, as attorney-in-fact for the debtor, transfers the debtor's equity of redemption to the foreclosure sale purchaser."); Yellow Creek Investments, LLC v. Multibank 2009-1 CRE Venture, LLC, 329 Ga. App. 577, 581-82 (2014).  Until the consummated foreclosure sale has occurred, the borrower still holds the same interests in the Property as they held before the rescinded sale.  Tampa Inv. Grp., 290 Ga. at 727, 727.

In this case, Plaintiffs attach as Exhibit R to their Complaint, a letter from Nationstar to Plaintiffs' counsel dated June 28, 2012, stating that the May 1, 2012 foreclosure sale "has been rescinded."  (Compl., Ex. R; Fed. R. Civ. P. 10(c)); see also Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985) (holding that court may review documents attached to complaint as part of motion to dismiss).  Plaintiffs, however, present no facts tending to show that Nationstar did not rescind the foreclosure sale as indicated.  Moreover, Plaintiffs fail to present any facts tending to show that the foreclosure sale was ever consummated.  Plaintiffs present no

facts tending to show that Nationstar executed and delivered a deed under power conveying Plaintiffs' interest in the Property or that Nationstar has indicated in a writing that it has applied foreclosure proceeds to Plaintiffs' loan.  Nor is it apparent from the allegations of the Complaint that Plaintiffs lost any property rights or experienced any change with respect to ownership of the Property.  Indeed, it appears that Plaintiffs' interest in the Property has not been transferred as this Court takes judicial notice that the Fulton County Board of Assessors Property Records still indicates that Plaintiffs own the residence.[1]  See Fulton County Board of Assessors' website, available at http://qpublic9.qpublic.net/ga_display_dw.php?county=ga_fulton&KEY=17+01120 0021716 (last visited August 17, 2015).  Under these circumstances, Plaintiffs fail to allege sufficient facts tending to show that a foreclosure ever occurred.  Thus, Plaintiffs also fail to state a claim for wrongful foreclosure.

Furthermore, Plaintiffs fail to state a wrongful foreclosure claim because they have not alleged sufficient facts indicating that they have been damaged.  In Georgia, a plaintiff pleading a claim for wrongful foreclosure must establish a legal duty owed to it by the foreclosing party, a breach of that duty, the injury it sustained, and damages. Heritage Creek Dev.Corp. v. Colonial Bank, 268 Ga. App. 369, 371 (2004).  Given that there are no allegations within the Complaint tending to show that rescission did not

---

[1]  The Court may take judicial notice of public records when evaluating a motion to dismiss.  Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (finding that it was appropriate to take judicial notice of public records when evaluating motion to dismiss).

occur or that the sale was consummated, there is also no indication that Plaintiffs' ownership of the Property ever materially changed or that Plaintiffs suffered any loss. Under these circumstances, Plaintiffs have not alleged sufficient facts to make their wrongful foreclosure claim plausible.

Plaintiffs argue that they should be given an opportunity to discover whether Nationstar applied foreclosure proceeds towards Plaintiffs' loan balance or executed and delivered a deed under power conveying Plaintiffs' interest in the Property. This Court is not persuaded. Under the federal rules, a plaintiff is not "entitled" to discovery in order to substantiate his claims. Cummings v. Mortg. Elec. Registration Sys., No. 1:13-CV-3302-TWT, 2014 WL 3767797, at *4 (N.D. Ga. July 30, 2014) ("[A] plaintiff is not entitled to discovery. A plaintiff must first file a complaint which states a legal claim before the door to discovery is opened. Under the Federal Rules of Civil Procedure, a plaintiff may not speculate as to a host of various improprieties that could potentially occur in any foreclosure process and then use that speculation to bootstrap a request for discovery."); see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Moreover, the Plaintiffs have failed to show why they would not have access to information that could help establish a basis for their claim without the benefit of discovery, such as their loan account statement or deed records showing that a deed was executed and recorded.

In the Stimus case upon which the Plaintiffs rely upon for the proposition that

13

they should be permitted to discover facts relevant to whether the foreclosure sale was consummated, the court explained that while the plaintiff had may have potential problems with establishing or proving some parts of her claim, the plaintiff had alleged enough facts where her claims were factually plausible.  Stimus v. CitiMortgage, Inc., No. 5:10-CV-435 (MTT), 2011 WL 2610391, at *5 (M.D. Ga. July 1, 2011).  That case is distinguishable, however, because the plaintiff there asserted that a foreclosure sale took place and was consummated through the execution of a deed under power or sale and there was conveyance of her property to another as the basis for the wrongful foreclosure claim.  Stimus, 2011 WL 2610391, at *3-4.  These facts established a plausible claim that a valid foreclosure occurred.  Id.  Here, Plaintiffs have failed to plead any facts which would suggest a consummated foreclosure occurred. Because Plaintiffs allegations fail to make it plausible that the foreclosure sale was ever consummated, Plaintiffs wrongful foreclosure claim should be **DISMISSED**.

### C.   Breach of Contract

Plaintiffs allege in Count II of their Complaint that Defendants breached their contractual duties when they foreclosed on the Property contrary to their assurances within the April Acknowledgment Letter that they would not foreclose during the period in which Plaintiffs' modification request was being considered.  (Compl. ¶¶ 61-63). Plaintiffs further contend that Defendants' actions in this regard breached the Security Deed by failing to exercise the power to foreclose fairly.  (Compl. ¶ 61).  Defendants contend that Plaintiffs' breach of contract claim fails because Plaintiffs' have not

14

identified any provision within the Security Deed that Defendants breached, the April Acknowledgment Letter was not a valid contract, and Plaintiffs do not identify any damages they suffered.

In order to establish a breach of contract claim under Georgia law, a plaintiff must prove (1) a breach of the contract and (2) resultant damages (3) for the party who has the right to complain about the contract being broken.  Inland Atlantic Old Nat'l Phase I, LLC v. 6425 Old Nat'l, LLC, 329 Ga. App. 671, 677 (2014); Dewrell Sacks, LLP v. Chicago Title Ins. Co., 324 Ga. App. 219, 223 (2013).  In this case, Plaintiffs fail to point to any contractual provision present within the Security Deed which prohibits Defendants from foreclosing on Plaintiffs' home during a period of time in which a modification is under consideration.  Thus, Plaintiffs have not made it appear plausible that Defendants' conduct in this case breached the Security Deed.

Additionally, the Court finds that the April Acknowledgment Letter is not a contract.  To constitute a valid contract, there must be parties able to contract, consideration in support of the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate.  O.C.G.A. § 13-3-1. As argued by Defendants, however, the April Acknowledgment Letter is not a contract because Nationstar's assurances therein are unsupported by consideration.  Forbearance agreements are unenforceable for lack of consideration under the pre-existing duty rule, which provides that "[a]n agreement on the part of one to do what he is already legally bound to do is not a sufficient consideration for the promise of another."  McGowan v.

Homeward Residential, Inc., 500 F. App'x 882, 884-85 (11th Cir. 2012).

Plaintiffs now seek to avoid this result by arguing that they gave consideration because they could have filed for bankruptcy, but did not do so. Even assuming that Plaintiffs' forbearance from filing for bankruptcy is adequate consideration, there is no indication that Plaintiffs offered to not file for bankruptcy in exchange for Defendants' agreement not to foreclose on Plaintiffs at the time of the April Acknowledgment Letter. Where the promise of one party is relied on as a consideration for the other, the promises must be concurrent and obligatory upon each at the same time, in order to render either binding. Pabian Outdoor-Aiken, Inc. v. Dockery, 253 Ga. App. 729 (2002). Furthermore, a mere forbearance by a party, without even so much as a request therefore will not afford consideration for an express promise. OfficeMax, Inc. v. Sapp, 132 F. Supp. 2d 1079, 1085 (M.D. Ga. 2001); European Bakers, Ltd. v. Holman, 177 Ga. App. 172, 173 (1985) (voluntary forbearance which was not bargained for was not consideration). Plaintiffs do not allege that they made any promises to Nationstar in exchange for Nationstar's agreement not to foreclose on their second home. (Compl. ¶¶ 33-49, 58-63). Accordingly, Plaintiffs' breach of contract claims should be **DISMISSED**.

### D.   **Breach of the Covenant of Good Faith and Fair Dealing**

In Count III, Plaintiffs allege Defendant Nationstar and Defendant BNY breached their duties of good faith and fair dealing when the Defendants falsely communicated to Plaintiffs in the April Acknowledgment Letter that it would not proceed with the

16

foreclosure sale of the Property, but continued with and completed the foreclosure sale on May 1, 2012. (Compl. ¶¶ 77-78). Defendants contend that Plaintiffs' good faith and fair dealing claim fails because there was no breach of an actual term of a valid contract.

This Court finds that Plaintiffs fail to state a claim for breach of the duty of good faith and fair dealing because Plaintiffs have not alleged that Defendants breached any express contractual provision. The Supreme Court of Georgia has recognized that "'[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.'" Brack v. Brownlee, 246 Ga. 818, 820 (1980). "This implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. And, where the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith." Camp v. Peetluk, 262 Ga. App. 345, 350 (2003) (internal quotation marks and citation omitted). However, "there is no independent cause of action for violation of the covenant apart from breach of an express term of the contract." Morrell v. Wellstar Health Sys., Inc., 280 Ga.App. 1, 5 (2006); see also Am. Casual Dining, LP v. Moe's Sw. Grill, LLC, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) ("Thus, in order to state a claim for breach of the implied duty of good faith and fair dealing, a plaintiff must set forth facts showing a breach of an actual term of an agreement."). Instead, the covenant of good faith and fair dealing modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms de facto when performance is maintained de jure. Alan's of Atlanta, Inc. v.

17

Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990); Stuart Enters. Int'l v. Peykan, Inc., 252 Ga. App. 231, 234 (2001)).  The implied covenant of good faith modifies, and becomes part of the provisions of the contract itself and as such, is not independent of the contract itself.   Stuart Enters. Int'l, 252 Ga. App. at 234.  Thus, the covenant of good faith and fair dealing is not an undertaking that can be breached apart from contract terms.  Alan's, 903 F.2d at 1429.

Plaintiffs cannot establish their breach of the duty of good faith and fair dealing claim with respect to the April Acknowledgment Letter because, as discussed above, the April Acknowledgment Letter was not a contract and therefore, there were no "contractual terms" within the letter for Defendants to breach.  Furthermore, as discussed above, Plaintiffs have not identified any explicit provision of the Security Deed that Defendants have breached.  Accordingly, Plaintiffs' breach of the duty of good faith and fair dealing claims should be **DISMISSED**.  See, e.g., Mayhew v. Branch Banking and Trust Co., No. 2:14-CV-00091-RWS, 2014 WL 6769343, at *13 (N.D. Ga. Dec. 1, 2014) (dismissing breach of the covenant of good faith and fair dealing because the plaintiff did not direct the court to a contractual provision the bank violated); Granville Alley v. Farmers Bank, Inc., No. 3:13-CV-146 (CAR), 2014 WL 4287103, at *8 (M.D. Ga. Aug. 29, 2014) (dismissing breach of the covenant of good faith and fair dealing because plaintiffs did not allege that the bank breached any explicit term in the contracts).

18

**E.    Promissory Estoppel**

In Count IX of Plaintiffs' Complaint, they contend that under the doctrine of promissory estoppel, Defendant Nationstar's promise not to foreclose until after Nationstar evaluated Plaintiffs' modification requests should be enforced.  (Compl. ¶ 112).  Defendants contend that Plaintiffs' promissory estoppel claim fails because since the foreclosure sale was not ever consummated, Plaintiffs cannot show that they were damaged by Defendants' alleged promise not to foreclose.  The essential elements of promissory estoppel are:

> (1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the [plaintiffs] to rely on such promise; (3) the [plaintiffs] relied on such promise to [their] detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, [plaintiffs] changed [their] position to [their] detriment by surrendering, forgoing, or rendering a valuable right.

Hendon Props., LLC v. Cinema Dev., LLC, 275 Ga. App. 434, 438 (2005).

In this case, Plaintiffs fail to state a promissory estoppel claim because they have not alleged sufficient facts tending to show that they relied on Nationstar's promise not to foreclose to their detriment or that Plaintiffs surrendered a valuable right as a result of their reliance.  As discussed above, Plaintiffs have not alleged sufficient facts tending to show that the foreclosure sale was consummated.  Since there is no indication in this case that the foreclosure sale was consummated, there is also no indication that Plaintiffs' were damaged by the foreclosure sale which occurred on May 1, 2012.  Until the consummated foreclosure sale has occurred, the borrower still holds the same interests in the property as they held before the rescinded sale.  Tampa Inv. Grp., 290

19

Ga. at 727, 727.  Accordingly, there is not sufficient facts to make it plausible that Plaintiffs' reliance on Nationstar's representations that it would not foreclose were to Plaintiffs' detriment or that as a result, Plaintiffs surrendered a valuable right. Therefore, Plaintiffs' promissory estoppel claim should be **DISMISSED**.

**F.    Fraud, Fraudulent Misrepresentation, and Negligent Misrepresentation**

In Counts IV and V, Plaintiffs allege that Nationstar's April Acknowledgment Letter, June Acknowledgment Letter, and June Request Letter intentionally and fraudulently misrepresented that a foreclosure sale of the Property would not occur until after the modification evaluation period concluded.  (Compl. ¶¶ 81, 87, 93).  Plaintiffs state that they relied on  Nationstar's statements to their detriment because they could have petitioned for bankruptcy if they had known that Defendants would not forebear foreclosing on their property.  (Compl. ¶ 86).  In Count VI of Plaintiffs' Complaint, Plaintiffs allege that Defendant Nationstar negligently misrepresented that no foreclosure sale would occur during the period in which the modification was considered. (Compl. ¶¶ 96-98).  Defendants contend that Plaintiffs' fraud claims should be dismissed because Plaintiffs have not complied with Federal Civil Procedure Rule 9, Plaintiffs did not suffer any damages since the foreclosure sale never took place, and Plaintiffs could not have reasonably relied on the agreement to postpone the foreclosure sale.  Defendants contend that Plaintiffs' negligent misrepresentation claim similarly fails because Plaintiffs did not plead an economic injury resulting from their reasonable reliance on false information provided by Defendants and their agents.  Plaintiffs

20

respond that they have suffered damages because if they had not reasonably relied on Nationstar's statements that it would not foreclose, they could have undertaken efforts to protect their interests in their property such as filing for bankruptcy protection.

To state a claim for fraudulent misrepresentation, a plaintiff must allege facts showing that the defendant knowingly made false statements, that it made those statements with an intention to induce her to act or refrain from acting in reliance on the statements, that she justifiably relied on the false statements, and that she was damaged as a result. See, e.g., Uhlig v. Darby Bank & Trust Co., 556 F. App'x 883, 889 (11th Cir. 2014); Eason Publ'ns, Inc. v. NationsBank of Ga., 217 Ga. App. 726, 730 (1995); Maddox v. S. Eng'g Co., 216 Ga. App. 6, 7 (1994). Similarly, the essential elements for negligent misrepresentation include "(1) the defendant's negligent supply of false information to foreseeable persons . . . (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." Uhlig, 556 F. App'x at 889 (citing Grand Master Contracting, LLC. v. Lincoln Apartment Mgmt. Ltd. P'ship, 314 Ga. App. 449, 451 (2012)). In this case, Plaintiffs fail to state a fraudulent or negligent misrepresentation claim because Plaintiffs do not show that they relied on false information and have been damaged as a result. As discussed above, despite the attachment of Nationstar's letter to the Complaint indicating that Nationstar rescinded the foreclosure sale, there are no facts within the Complaint tending to show that Nationstar did not rescind the mortgage. Additionally, there are no facts tending to show that Nationstar consummated the foreclosure sale. As

noted above, until the consummated foreclosure sale has occurred, the borrower still holds the same interests in the property as they held before the rescinded sale. <u>Tampa Inv. Grp.</u>, 290 Ga. at 727. Thus, Plaintiffs have failed to allege any facts making it plausible that they have been damaged by any of Nationstar's statements that they would refrain from foreclosing on the Property until the modification request was evaluated. Accordingly, Counts IV, V, and VI of Plaintiffs' Complaint should be **DISMISSED**.

### G.   <u>Declaratory Relief</u>

Plaintiffs request that the Court declare (1) that Defendants have misrepresented the true identity of the secured creditor and investor of Plaintiffs' loan; (2) the true identity of the secured creditor and investor of Plaintiffs' loan; (3) the identity of the party who has full authority to modify Plaintiffs' loan; and (4) that the foreclosure was wrongful under Georgia law. (Compl. ¶ 101). Defendants argue that Plaintiffs' request for declaratory relief fails because there are no allegations demonstrating the presence of an actual controversy. Plaintiffs respond that they have alleged sufficient facts supporting the notion that an actual controversy exists based on the documents Defendants have sent them preceding the May 1, 2012 foreclosure sale.

Georgia law provides that declaratory judgment may only be issued in cases of actual controversy. O.C.G.A. § 9-4-2. There is a justiciable controversy where a concrete issue is present and there is a definite assertion of legal rights, and a positive legal duty with respect thereto, which are denied by the adverse party. <u>Higdon v. City of Senoia</u>, 273 Ga. 83, 85 (2000). Furthermore, a declaratory judgment is authorized

22

when there are "circumstances showing [a] necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest." Baker v. City of Marietta, 271 Ga. 210, 214 (1999).

Federal law similarly imposes a case or controversy requirement.[2]   The Declaratory Judgment Act provides in relevant part:  "In a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Congress limited jurisdiction under the Act to actual controversies "in statutory recognition of the fact that federal judicial power under Article III, Section 2 of the United States Constitution extends only to concrete 'cases or controversies.'" Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995). "Whether such a controversy exists is determined on a case-by-case basis" and "by the totality of the circumstances."  Id.  The plaintiff must allege facts showing that there is a substantial continuing controversy between adverse parties and facts from which the

---

[2]   Where the state declaratory judgment law is procedural rather than substantive, the federal Declaratory Judgment Act should be applied, rather than state law. Incredible Investments, LLC v. Fernandez-Rundle, 984 F. Supp. 2d 1318, 1323-24 (S.D. Fla. 2013); Krauser v. BioHorizons, Inc., 903 F. Supp. 2d 1337, 1346 n.6 (S.D. Fla. 2012) (applying federal law to removed state law declaratory judgment claim).  Whether Georgia or federal law is applied, the result is the same in this case.

23

continuation of the dispute may be reasonably inferred.  Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1347 (11th Cir. 1999).  "The controversy must be more than conjectural; the case must 'touch . . . the legal relations of parties having adverse legal interests.'"  Atlanta Gas Light Co., 68 F.3d at 414 (quoting U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744, 747 (11th Cir. 1991)).  To determine whether a plaintiff has met this burden, the Court "look[s] to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time."  Id.

Here, Plaintiffs fail to allege a basis for finding that an actual controversy exists. Plaintiffs' Complaint fails to allege sufficient facts showing that they are involved in an actual controversy because as discussed above, there are no facts negating Nationstar's letter attached to Plaintiffs' Complaint which stated that the foreclosure sale which was scheduled for May 1, 2012, was rescinded.  Additionally, there are no facts tending to show that the May 1, 2012 foreclosure sale was ever consummated.  Thus, there is no threatened legal injury at the present time resulting from alleged misleading information concerning the true identity of the secured creditor and investor of Plaintiffs' loan or the party who has authority to modify the Plaintiffs' loan given in connection with the May 1, 2012 attempt to foreclose upon Plaintiffs' loan.  See Crespo v. Coldwell Banker Mortg., 599 F. App'x 868, 873 (11th Cir. 2014) (explaining that plaintiffs could not obtain declaratory relief because given that the plaintiffs had not valid cause of action and because the foreclosure sale already occurred, they could not have presented the court with a case or controversy); McLean v. Homebanc Mortg. Corp., No.

24

1:13-CV-01051-JEC, 2014 WL 1232146, at *5 (N.D. Ga. Mar. 25, 2014) (explaining that because the plaintiffs' allegations did not support any plausible claim for recovery under Georgia law, no actual, active controversy exists and thus, declaratory judgment was foreclosed); Lubin v. Cincinnati Ins. Co., No. 1:09-CV-1156-RWS, 2009 WL 4641765, at *3 (N.D. Ga. Nov. 30, 2009) ("In order to bring a declaratory judgment action an actual controversy must exist. The issue is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment."). Additionally, there is no indication that Nationstar has imminent plans to foreclose in the future without clarifying the information Plaintiffs seek. Accordingly, this Court recommends that Plaintiffs' claim for declaratory judgment should be **DISMISSED.**

## CONCLUSION

Based on the foregoing reasons, this Court **RECOMMENDS** that Defendants' Partial Motion to Dismiss be **GRANTED**. (Doc. 3).

**SO REPORTED AND RECOMMENDED** this 19th day of August, 2015.

/S/LINDA T. WALKER
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

25